# Richmond

## Knox Stove Works, Incorporated v. R. P. Wall.

December 7, 1942.

Record No. 2519.

Present, All the Justices.

The opinion states the case.

*Curry Carter* and *J. M. Perry*, for the plaintiff in error.

*J. Wesley Taylor* and *Forest T. Taylor*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action on a petition for an attachment sued out by R. P. Wall against the Knox Stove Works, Incorporated, a foreign corporation, to recover $2,071.82, damages for the alleged wrongful discharge of the plaintiff in violation of a contract between the parties.

The bill of particulars sets out that the claim was based on an oral contract for one year's service from January 1, 1939, entered into at the office of the defendant corporation in Knoxville, Tennessee, sometime between the dates of November 1, 1938 and January 6, 1939, and that the defendant wrongfully refused to allow the plaintiff to continue his services thereunder after April 1, 1939. The grounds of the defense were that the defendant did not enter into any contract with the plaintiff on January 6, 1939, which was

breached; that the employment of the plaintiff was at the will of both the employer and the employee; that no damages had been suffered by the plaintiff; and that his discharge was justified.

A jury returned a verdict for the plaintiff, fixing his damages at $1,403.19, upon which verdict the judgment appealed from was entered.

The amount of the recovery is not in question here. The right of the plaintiff to maintain the action is the principal issue.

At the conclusion of all of the evidence, the defendant moved to strike the plaintiff's evidence and enter judgment for the defendant upon the ground that the oral contract relied upon was unenforceable under the statute of frauds, in that no action may be brought upon any oral agreement that is not to be performed within a year. Michie's Code of Virginia, 1936, section 5561 (7); Williams Code of Tennessee, 1934, section 7831 (5).

Counsel for Wall concedes that if the oral contract was for a period of more than one year, or was merely an agreement of employment for one year to begin at a future date and without a new or renewal contract during the period set for the employment, the case comes within the statute.

The evidence may be substantially stated as follows:

R. P. Wall, by trade or calling, has been for years employed as a salesman for two or more stove manufacturers. In 1932, he was by his then employer recommended to J. B. Miller, an officer and sales manager of the Knox Stove Works, Incorporated, for employment by the latter. Miller, while desirous of employing him at that time, did not do so because of the added expense. He, however, kept in touch with Wall until he thought the time right to develop sales in new territory.

In 1935, Miller was made the chief active executive officer of his company under the titles of vice-president and general manager, and was given general control of all of the company's business and management. He had complete power and authority to hire and discharge all employees and to fix their terms

of employment and salaries. He continued in this capacity until he resigned and severed his connection with the company in February, 1939. In August, 1935, Miller employed Wall for his company, and allotted him a large territory in Virginia and the surrounding States. Because of the qualifications and satisfactory services of Wall, he was at the end of that year and each subsequent year, employed and re-employed on a yearly basis at a monthly salary of $275, plus an allowance for car and traveling expenses.

In October or November, 1938, at the request of Miller, Wall took a voluntary reduction of 10% per month in his salary, although he was under a yearly contract. About this time, one of the salesmen of the defendant left and secured work with another company. Miller then called in Wall to ascertain whether he would agree to continue to stay with the defendant "at his present then set up." Wall agreed that he would not accept other employment, and would stay with the Knox Company for the remainder of 1938 and through the year 1939, upon the basis on which he was then employed.

Nothing more seems to have been said about employment for 1939 until the annual sales meeting of the company, held at its office in Knoxville, Tennessee, January 6, 1939. Miller says, on that occasion, he called Wall to his office and talked with him "individually;" "went over" his territory; "discussed" the "arrangement" for his employment; told him what was expected of him; and sent him out into his territory. In Miller's own language, the former "arrangement" for Wall's services was then "gone over again." Wall suggested that the company furnish him with an automobile to reduce his traveling expenses; but this was refused because Miller had other plans in mind as to the way the salesmen should travel.

Miller stated that he did not employ Wall from month to month, but "for the year 1939, from January 1st until the end of the year," and gave him certain privileges during that time, such as to carry a line of furniture on a commission basis.

Wall corroborates fully the uncontradicted evidence of Miller. He said he worked until the end of 1935, and a new oral contract was thereafter made for each succeeding cal-

endar year upon a yearly basis. He said that while he considered, at the conclusion of the conference in November, he was engaged to work for the Knox Stove Works for 1939, not all of the terms of his employment were then agreed to. He declared the terms were "not confirmed" by Miller until January 6, 1939, when they were finally gone over, discussed and agreed upon.

In February, 1939, after Miller's severance of his employment with the defendant, a son of the principal stockholder and a relative of the family controlling the defendant company, succeeded Miller and took over the latter's duties. As late as March 23, 1939, the new officer was complimentary in his references to the services rendered by Wall. Some differences subsequently arising relative to a consignment of stoves and the salesman's expense account, Wall was discharged as of April 30th by letter dated April 28th, and further payment of any salary thereafter refused.

Wall made an explanation of the alleged irregularities. Numerous witnesses testified that the general reputation of Wall for truth and veracity was good.

The question of the company's justification for the discharge was submitted under proper instructions to the jury, which found against the company, and it is, therefore, unnecessary to go further into the evidence on that point.

The defendant sought to introduce evidence that it was the general custom of the Knox Stove Works, during the period of Wall's employment, to employ its salesmen on a monthly basis and that other of its salesmen were so employed. The trial court properly excluded such evidence. The only persons who knew of the contract with Wall testified to its terms and conditions. No denial was made of the authority of the executive officer of the company to make the yearly contract. It was an express, specific and definite contract. It spoke for itself, and no custom or habit of the company with regard to its employment of other salesmen could affect it. Evidence of custom or habit may be admissible or applicable where circumstantial evidence is used to set up the

terms of a contract, but not where the terms of the contract are positive, certain and plain.

There was no error in the giving and refusing of instructions. The case was fairly submitted to the jury, and the instructions taken separately and as a whole covered all of the issues involved.

Upon the facts the case is close. Nearly all the cases which we review are close either as to the law or facts, or else they would likely not be before us.

The jury and the trial judge thought that the preponderance of the evidence was with Wall in showing that there was a new contract, or a renewal in expressed terms of a former contract, entered into on January 6, 1939, for the year 1939. Considering the background, the setting, the evidence, and reasonable inferences therefrom, we are in agreement with their view. Upon appeal, the plaintiff in error has not overcome its burden of showing that there is error in that conclusion or in the proceedings leading to it.

The evidence shows that there was more than a mere acknowledgment or restatement of the terms of the original agreement on and after the day of its commencement. In the language of the parties, its terms were "gone over again" in January. The "arrangement" theretofore made with Wall was discussed at that time in addition to a request by the latter for the use of the company car, and the final terms were then agreed upon and "confirmed" by both parties. Such an agreement is not within the statute of frauds. See 27 C. J., Statute of Frauds, section 115; Williston on Contracts, Volume 2, Revised Edition, page 1465, section 503.

Having decided the case upon its merits, it is unnecessary to consider the motion of the appellee to dismiss the writ of error, because of the alleged failure of the appellant to give a proper bond.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*